IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, JEFF LANDRY et al., PLAINTIFFS, <br><br>v. <br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services et al., DEFENDANTS. | No. 3:21-cv-04370-TAD-KDM |

**Plaintiff Sandy Brick's Reply Supporting Her Motion for Judicial Notice of Certain Facts in Support of Her Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion to Dismiss, or in the alternative, <u>Motion for Summary Judgment</u>**

Defendants are absolutely right that APA review of a rule focuses on the administrative record. But that does not mean a court takes as evidence only the administrative record. For example, the Court takes testimony (whether by deposition or declaration) from the plaintiffs in a case to establish their standing and the nature of their injuries.

Here, Plaintiff Sandy Brick did not move to supplement the administrative record because the administrative record constitutes all materials before the agency decision maker at the time of the decision. *Belgard v. USDA*, 185 F. Supp. 2d 647, 653 (W.D. La. 2001). Brick also had no reason to think that the Secretary of Health and Human Services considered these four documents before he signed off on the Rule.

1

But that does not mean they are inappropriate for this Court's notice and consideration. Indeed, the Defendants acknowledge that "the Fifth Circuit recognizes certain narrow exceptions that permit a district court to consider evidence outside the administrative record—i.e., '[s]upplementation of the administrative record.'" Resp. 2 (citing *Medina Cnty. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010)). These include when:

1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . .

2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or

3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* (quoting *Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1002 (D.C. Cir. 2008)). Brick's proposed materials easily fit within that framework.

Documents 1 and 4 fit within the label "background information." *Id.* Document 1, the briefing from the White House press secretary, announced broad administration policy that opposed vaccine mandates. It is important background information about the administration's previous policy. And courts regularly look to transcripts of White House press briefings as authoritative statements of administration policy. *See, e.g., Trump v. Hawaii*, 138 S. Ct. 2392, 2437 (2018) (Breyer, J., dissenting); *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018); *Ala. Ass'n of Realtors v. United States HHS*, 557 F. Supp. 3d 1, 4 (D.D.C. 2021). Document 1 also falls within the first category of "deliberately or negligently

excluded documents that may have been adverse to [the agency's] decision" because President Biden's initial position opposing mandates undermines his administration's about-face on the issue. It should have been included in the administrative record.

Document 4 also provides important background information. It represents a direct statement from a senior HHS official (the deputy director of the Office of Head Start) in favor of voluntary vaccination, delivered to Head Start providers nationwide in a webinar format. Again, the transcript of a webinar may be an awkward fit for an administrative record but it is essential background information for this Court. And the webinar cannot simply be replaced by the Rule's acknowledgment that HHS previously encouraged voluntary vaccination because it represents that policy's statement *at a specific point in time*, namely mid-July 2021, less than two months before the September 9, 2021, announcement.

Establishing the exact nature of the prior policy is important to the APA analysis. Agencies are not permanently bound by an initial policy. But APA analysis is different for a new policy versus a changed policy: "the 'requirement that an agency provide reasoned explanation for its action would ordinarily demand that [the agency] display awareness that it *is* changing position' and 'that there are good reasons for the new policy.'" *California v. Azar*, 950 F.3d 1067, 1096-97 (9th Cir. 2020) (emphasis in original) (quoting *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009)). Similarly, "'[i]t would be arbitrary or capricious to ignore,' where applicable, that 'its new policy rests upon factual findings that contradict those

which underlay its prior policy,' or that 'its prior policy has engendered serious reliance interests that must be taken into account.'" *Id.* (quoting *FCC,* 556 U.S. at 515). Thus, to fully pursue her claim, Brick must establish the prior policy that the Rule changed. The Rule makes a passing reference to voluntary vaccination but Document 4 adds value as a time-specific, definitive statement of the prior policy that a responsible senior official disseminated. It is, therefore, valuable "background."

Documents 2 is also important background evidence because it shows the pretextual nature of the Rule. In other words, it shows the agency made the decision for one reason on the record but another reason *sub rosa.* Courts must permit plaintiffs to offer evidence from outside the record to make pretext claims, or they should stop considering pretext claims at all. The entire point of a pretext claim is that the reasons given on the record are not the real reasons, and so evidence is necessary to show the actual reasons. Courts regularly review extra-record evidence when establishing whether an administrative decision was made for pretextual reasons. *See, e.g., Sarsour v. Trump,* 245 F. Supp. 3d 719, 735-36 (E.D. Va. 2017); *Hawaii v. Trump*, 241 F. Supp. 3d 1119, 1127-28 (D. Haw. 2017) (citing news interviews with the president, news interviews with presidential advisers, and presidential tweets).

Document 2 is helpful to show pretext because it situates the Rule within the President's overall September 9 package of vaccine mandates that the federal government issued. President Biden's arguments in that speech about "the

pandemic of the unvaccinated" are important to establishing Brick's theory that the Rule is about adult public health rather than children's health. Document 3 is similarly helpful to Brick because it is HHS's initial explanation of the mandate prior to any formal rulemaking. It limits the mandate only to the 270,000 that Head Start providers employ and does not include the million-plus volunteers that HHS added to the Rule later. It also squarely situates the mandate within the administration's overall package of vaccine mandates.

Brick still bears the burden to prove her pretext claim on summary judgment. But these two documents are useful tools for her to accomplish that end and she deserves the opportunity to make the best presentation of her case.

In sum, Brick asks this Court to notice four documents, all taken from official government websites, all directly relevant to this case. The four documents all easily fall within Defendants' own proposed exceptions as valuable background and evidence of pretext. The Court should grant the motion so Brick can make her best case.

Dated: August 31, 2022

/s/ Sarah Harbison
Sarah Harbison
Pelican Institute for Public Policy
400 Poydras St., Suite 900
New Orleans, LA 70130
Telephone: 504-952-8016
sarah@pelicaninstitute.org

Daniel R. Suhr
Liberty Justice Center
440 N. Wells St., Suite 200
Chicago, Illinois 60654
Telephone: 312-637-2280
dsuhr@libertyjusticecenter.org